Diamond State Insurance, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, LLC, I draw the court's attention to the recently filed 28J letter involving the Catlin case from Pennsylvania Federal Court that summarized and updated the present state of New York law on the right to recover a settlement where the nature of the claims need only be shown to evidence potential liability on the facts known to the insurer, culminating in a settlement in an amount reasonable in view of the size of possible recovery and degree of probability of claimant's success against the insured. In response to that 28J letter, which emphasized that part of the Catlin case citing New York authority, LMC Lubbermans responded in a way that ignores entirely, as an inconvenient truth, the $750,000 offer for settlement that was made by Sunham at the time that Lubbermans had disclaimed coverage. As of that moment, had the case settled, it would have been clear, and Lubbermans concedes it would have been clear, that that would have been its legal obligation to fund the settlement. Did you not name Lubbermans as a defendant? Is that correct? That is correct, but they filed a counterclaim to the third-party complaint, and we answered that counterclaim that put into controversy the issue of their obligation to provide defense benefits. Also of interest is the ‑‑ I mean, you don't have to actually answer this, but why wouldn't you, given your background, have named Lubbermans as a defendant? Because there was a right of action directly under the umbrella policy provisions against Diamond, and at the time of the suits filing, Lubbermans was in a reorganization. But that was not true at the time the policy was issued. It was not true at the time that the non-extrinsic evidence was provided to Lubbermans that led it to reconsider its denial of defense, or even at the time of the actual settlement. So it's one of those rare instances. You can hear from Diamond, ah, we're really a pure excess policy. There's a word in the policy that says umbrella slash excess. Turns out if you have a scenario where all the provisions of the policy are met, coverage, collectible, valid, as to Sunham, vis‑a‑vis Diamond, but subsequently, through no fault of Sunham, there may not be a pathway to the primary policy, then that's when the umbrella policy comes into force, so long as we show that there was coverage within the meaning of the Lubbermans policy and coverage under the umbrella policy. But it turns out that's broader. The advertising injury is very much what the recent High Point case from this Court required, that there was physical display activity which was brought to the attention of the insurer, facts known to the insurer, to clarify what the distribution, which was alleged in the complaint, to clarify what the advertising, which is referenced in the prayer. This Court to look to the content of a prayer, hear the prayer said, hey, you have to give up all your advertising materials vis‑a‑vis Sage Garden and Canterbury pursuant to our request that you are enjoined from future distribution of these products. A case called Stratford Homes v. LaRusso cited in our reply, a 1995 decision, says, yeah, you can look at the content of the prayer to flesh out what word like distribution may mean practically. The same is certainly true of the actual photographs physically attached of the Sage Garden and Canterbury quilts, which we, to the complaint and the underlying action. Where is the advertising injury? The advertising is a mechanism for bringing to the attention of the public these things that were referring to the content and design that was allegedly part of the infringing activity, that was made known to the insurers, that was part of why Lumberman reconsidered its initial denial and reevaluated and agreed to defend under reservation of rights through independent counsel. Also, there was an industry mini trade market show, Joint Appendix 357, referencing back to Paragraph 12, the advertising materials in the Exhibits 4 and 5, JA113, and then product catalogs are part of that. So these additional materials have advanced the state of the law on showing coverage for infringement of advertising in the course and scope of advertising activities, which the High Point decision clarified could involve these knowledge of extrinsic evidence, which clarified and made more robust. And at the time Judge Cote reached her decision, the law hadn't advanced along those lines to clarify the importance of consideration of extrinsic evidence known to the insurer. But now, in view of that movement, I think it's clear that the facts are sufficient to evidence why there was a potential for coverage. If so, the Catlin citation to Lurie Brothers, which is where that quote, Lurie Brothers is a Second Circuit case from 1986, about so long as potential liability arises, is implicated. And so the other thing to bear in mind is there was a State. Breyer. Can I ask you to focus on the voluntary payments, which is what I think Judge Cote said. Yeah. The voluntary payments, the bottom line is at the time the settlement was reached, it was for an amount less, less than $750,000. So the carriers were already on notice that we had an offer of settlement, wasn't accepted. The case progressed to the point, stayed in the underlying action, where we went to this Lambert trial where the person who claimed to have originated the copyrights was present. They were aware of that. Indeed, Lowerman's paid the bill for Richard Hubble, the defense attorney, to show up and participate at that settlement. Which settlement led to the consummation of a resolution. When was Dimond notified of that settlement offer? Orally. And there's nothing in the record that claims that that oral notification of the fact that there was going to be a settlement opportunity because that's the purpose of someone attending a trial. There's nothing you can point to in the record? Absolutely, there's lots we can point to. The declaration of Lambert, or Hubble rather, which is not attacked, says that he had e-mails and he had phone conversations advising of his intent to show up, and that you have the fact of the settlement amount having been previously of a character that had that been accepted by the claimant, it was within the scope of the legal obligation of the insurers to declare. Where in the record can you show me that Dimond was notified of the settlement offer of $750,000? Well, there was no specific notice of here's the settlement offer we're going to make at the time of the Lambert trial. They were aware. Is that an important part of this voluntary payment provision? It's an exception that is within the scope of the obligation where they were already on the hook to pay anything that was $750,000 or less because the offer of settlement had made it at a time when both carriers had declined to defend. And so that's why the Oxford case is very critical from the main Supreme Court, as referenced in Catlin. And so in that circumstance where the exigencies of the need to settle the case were evident, became clear, the voluntary payment provision is not a necessary bar because the philosophy behind its enforceability was not implicated in a negative way. Consolidated Edison Cove, New York, which is signed at Materials 215, Lexis 121573 at Asterix 27, says the voluntary payments clause must be construed according to the reasonable expectations of the insured, citing the smart tile. A case called Peckin Insurance Cove v. Xdata, 958-397-404, Illap, 2011, talks about the fact that where there is a payment that was within the scope of the reasonable expectations of the insured, that should be permitted to occur. And so right here, if this case had settled for $750,000, they were on the hook. It didn't. But the point is, we got a better deal because at the end, we gave up affirmative counterclaims worth $150,000 back against Penn-Am in order to induce them at, during a break at the Lambert trial, to settle the case. Breyer, what does the voluntary payment provision say? It says that the — there will be no payment without the prior notice. But here, the payment was not without prior notice, because they were on notice. The fact that $750,000 or below was an amount that they were on the hook for because at the time the $750,000 amount was an offer of proof, they had disclaimed coverage. And everybody agrees that if that had occurred at that point in time, they were on the hook. And they never took the position and said, well, we let you know that we will never agree to take any sum, you know, less than $750,000, and that won't be acceptable. It was implicit that, and a reasonable inference to draw, based on the reasonable expectations doctrine in New York, that that sum could be payable because we — they had already been on the hook. By settling, we saved a lot of defense fees going forward. We ended up giving affirmative relief, and we did it for an amount that they were already on the hook for because of the progress in the lawyering that had occurred to date. And they received, according to the Declaration of Hubble, which is not controverted by any evidence that they had submitted, that he had communications with them about his intent to appear at the trial. Things happen during a trial. A Federal judge is sitting there. He invites the parties present at that trial, including Sunham, who has an interest in some of the claims that will be adjudicated, depending on who owns the copyright. And so it occurred. If you do not allow this kind of a settlement to be an exception, the Voluntary Payments Rule, you will disincline courts to be able to facilitate settlements. Thank you, Mr. Goldman. I've given you some extra time, Mr. Goldman. I saw that, Your Honor. I appreciate that. That's fine. You've reserved two minutes, and we'll hear from Mr. Verveniotis. Thank you, Your Honor. My name is Steven Verveniotis. I represent Dimond. May it please the Court. I think what we — just to touch on what you just heard, I think you kind of mangled both insurers in the same context. Just to be clear, Dimond is an excess insurance company. It issued an excess insurance policy to an entity called Kim Ing Enterprises, Inc. Anything and everything about the policy applies as to that entity, Kim. As to the Who's an Insurer provision, other entities may be incorporated if the underlying insurance covers and pays for them. There's a specific provision under the Dimond policy that says Sunham is an additional insured only if the underlying insurance is valid and collectible and covers them for any claim. Special condition for Sunham to be on the Dimond policy. The provision that you asked for, Your Honor, in terms of cooperating under the Dimond policy has two important terms. They're cited on page 50 on Dimond's brief. One is that no insurer will accept that their own costs voluntarily make a payment, assume any obligation or incur any expense without our consent. The second one, just as important, is no insurer will — insured will in any way jeopardize our right after an occurrence or offense. What was not known, and the difference between Lumbermans and Dimond is what was not known to Dimond, is that there had been all this deal — wheeling and dealing between Sunham and Lumberman. When you hear counsel say they had been told about the conference, he's talking about Lumberman. Lumberman and Sunham had dealt with each other, had had a lawsuit between each other about the coverage, apparently struck a deal where Sunham apparently compromised the position with respect as to what Lumberman was going to do about defense and possibly about indemnity. They were being notified and an attorney was involved that Lumberman agreed to pay at a certain particular rate. Dimond's not involved in any of this. They go on and whatever they did, they settled the case. Dimond is not involved in this. Not only are they not on notice, they certainly don't consent as is required. And all of these rights that otherwise would fall on an excess insurer to be able to pursue rights in the position of the insured, let's say, if there were rights against another insurance company or anybody, none of that was honored. Those provisions weren't under the Diamond State policy. But it goes back to the first thing I started with. In order to be, for Sunham, under my particular policy, Diamond, in order for them to have any coverages, we don't even get to what's an advertising injury or what's covered under the Diamond policy. They have to be covered by the underlying policy. They did a carve out for them. They said, we'll add Sunham as an insurer under this policy that we issued to an entity called Kim Hing Enterprises, Inc., but you've got to have underlying insurance that is valid and collectible and pays for you, Sunham, as to any claim. Clearly, that's not the case here. Clearly, well, either way you look at it, either there is valid and collectible insurance, such as Lumberman's has a million-dollar policy and has an obligation to defend and indemnify. Clearly, everything we're talking about is within the million. So, therefore, if there is coverage and they have satisfied the provision under my policy, if there is underlying coverage with Lumberman, Lumberman's the one they should be pursuing and collect from. If they can't collect from Lumberman or if they're not covered under Lumberman, my provision says on page JA 930 and on, you'll see in the policy, my provision says only if you've got valid and collectible underlying insurance, Sunham, are we going to tack you on to the Kim Hing policy. Either they can't satisfy their provision because there's no coverage or no collection from Lumberman, or they can't satisfy that provision, but the claim is within the Lumberman policy, so they should be paid by Lumberman. Either way, there's no case against Diamond. Unless there are any questions, everything else is in the briefs. Thank you, Your Honor. All right. Mr. DeDonato. Thank you, Your Honor. If it pleases the Court, Justice DeDonato, Morgan, Miller, Hewitt, Chabot, and Ford, third-party defendant Lumberman's. Very briefly, the Rule 28 letter refers to a Pennsylvania case in which the carrier abandoned the insured entirely. It denied coverage. There was no defense. There was no indemnity, and an agreement was made to construct a judgment to proceed against that carrier. That being said, as I indicated, my client is a third-party defendant. Plaintiff never sued my client. Judge Cote entered her summary judgment in 2011. A notice of appeal was filed. Fourteen days later, a notice of cross-appeal should have been filed by the third- party plaintiff. That wasn't done then, and it wasn't done now, nine years later. So this Court does not respectfully have jurisdiction to hear any appeal against my client because that procedural claim, that procedural, that procedure was not followed. And as a Supreme Court case, that indicates that. Also, this part of the case, I'm sorry, sir. So Sunham would not be precluded from proceeding against Lumberman's subsequent? It would be precluded, sir, because it never, Lumberman's never had a, Sunham never had a claim against Lumberman's in the underlying case. It did not name it in the complaint. My client is only a third-party defendant sued by Diamond. Diamond never filed a notice of cross-appeal. The only notice of appeal was Sunham against Diamond. As a third-party defendant, that procedural step has not been taken in nine years. And very briefly on the coverage, this policy, as Your Honor indicated, covers a grants coverage only for advertising liability. It does not grant coverage for knockoffs of copyrighted material, which Judge Keenan found in this case. That's exactly what happened. Maybe there's a policy in the world somewhere that would offer that coverage. Lumberman's policy did not. And lastly, on the voluntary contribution, as the record plainly states, the $600,000 was offered in settlement by Sunham at the time of trial. Remind me, will you, it's right in front of me. Yes, sir. Excuse me? Remind me, if you will, what the settlement was for. It was to settle the disputed claim that Sunham had sold the quilt product to engage in commerce with the quilt product that was copyrighted by supposedly two different entities. That has nothing to do with an advertisement. Has nothing to do with what, sir? I'm sorry. Has nothing to do with an advertisement. No, sir. And that's what Judge Cote found, and I believe she was right on, spot on with that finding in this case, that this policy does not cover the pirating of knockoff products that are copyrighted by others. That was the whole case. That was the whole coverage dispute. And Judge Cote decided that exact issue. Can you just, I'm sorry, go back to the standing issue? Yes, sir. I'm having trouble understanding your argument. You are saying, correct or incorrect, that Sunham is bound by the judgment. Sunham is bound by the judgment. In connection with the Lumbermans and its relationship with Lumbermans. Correct? Well, sir. Is it not bound by the judgment? Because if it's not, you've got other problems. No, it would be bound by the judgment to the extent that I move for summary judgment against Diamond. It was bound by the judgment. Yes, it was. I don't want to. If it is bound by the judgment, why would it not then have standing to appeal that judgment? Well, sir, the judgment was. Explain, procedurally explain that to me. Okay. Sunham sues Diamond State. Diamond State sues me as a third-party defendant. I move for a declaration that Diamond State has no claim of relief against me, and Judge Cote grants that motion for summary judgment on the third-party action. There was nothing in play, and I didn't mean to misstate it. There was nothing in play between Sunham and my client. The only cause of action. I guess I'm taken by your acknowledgment that Sunham, notwithstanding the fact that it's between you and Diamond, is bound by this judgment. I don't know if I understand correctly, sir, being bound by it because it had no claim against me. It did not seek relief against me. So Diamond is bound by my judgment, and it's a final judgment, so I don't know how they could have an appeal from a claim between a third-party plaintiff and a third-party defendant. There was no judgment affecting rights directly between you and Sunham, is that right? Other than the fact, Your Honor, that the declaration was that there was no coverage under the policy. So Sunham is bound by that judgment, insofar as there was this declaration? There was a declaration that there was no coverage under the policy. So it was bound by the judgment. If it's not bound by the judgment, then I've got other significant problems with this case? No, I understand what you want to say. On that question of law, that has been a declaration between certainly the third-party plaintiff and the third-party defendant. I guess I'm troubled by the fact that it's bound by it because it didn't participate in it. It didn't sue me. Sunham didn't. You put in a counterclaim that with a – and you sought a declaratory judgment. That's correct. Right? And so that is what ultimately binds Sunham. As the outcome of that litigation between a third-party plaintiff and a third-party defendant, it can't take – Sunham can't take a position Judge Coates was incorrect. You won on the motion, the action that you brought. On the question of law, I won by a declaration. Is that not appealable to us by the person who lost? Well, the grief party in that case is Diamond State. So it was against the judgment, whatever it was. Sunham was not a party to that. Only – only Diamond was a party to that? Diamond is the one that sued me. That's correct. It's only the one. It binds – what you got from the district court binds just you and Diamond and has no direct effect on any – direct effect on any relationship between you and Sunham. To the extent that – to the extent that Judge Coates made a finding of law that Sunham, I guess, did not participate in, I guess to that extent it is bound by that. And if it's bound by that, then why shouldn't it be allowed, based on our own precedent, to appeal? Why doesn't it have a stake in this outcome on appeal? It does. I can only rely, Judge, on what we've – I've stated what I believe was the point. Well, I know what you said, but I'm confused by it, so. I don't mean to confuse Your Honor, but I can only state it as what my understanding of the law is, is that that third-party action – and that claim, it may be in play between Diamond and Sunham. That might be, in fact, so. And Judge Coates decided that also. And that is binding on Sunham. You're making an elemental claim of lack of appellate standing, so we need to, I think, deal with that, right? I do understand that, sir. It's an odd procedural posture for the case. I agree with that. I've – it's unusual. Let me ask you for your advice on this. At a very simple level, what is the decree? What's the remedy that you would wish us to apply here? What do you want from us? Well, Judge, it would be an affirmation of Judge Coates' grant of summary judgment. Period. And at that point, assuming for the argument that occurs, the case is over as far as you're concerned? That would be correct. I'm just trying to figure out what it is that Judge Coates would be faced with, if at all, with any arguable remand. But in your view, a simple affirmance would resolve the question. I believe – yes, sir. And I'll ask your – Mr. Vernotis what his view is on what is his – what decree does he seek here? I think exactly the same, that the decision below is correct with respect to my policy. And just to correct, just to add one point. I didn't assert any affirmative relief from Lumbermen's other than to point out that they have a policy that is at play, is relevant to interpretation of my policy, and that they were a necessary party to the case. But clearly, the judge below addressed whether Sunhamps has a right to coverage under Lumbermen's in addition to my policy. You both are fully satisfied with Judge Coates' disposition of this matter? Exactly. That's why I wasn't aggrieved. Thank you. Yes, sir. I just – when I see a lot of cross, counter, whatever, and the caption has, you know, more words than I can say in 30 seconds, I'm wondering – I often ask, who wants what? So you've told me, and I appreciate it. Thank you very much. Mr. Gauntlet, you've reserved some time. Thank you. Your Honor, the question you asked is directly addressed at our 10-page brief filed April 11th, document 2771 at page 2. And it points out that there was a counterclaim against Sunham by Lumbermen's. And it asserted that there was no defense that was due, and there was no occurrence that created liability. And we contested that. And that contest is why we're here and have a right against Lumbermen's as well as against Diamond. Are you saying that the district court ruled against you and you're entitled to an appeal? That is correct. What was the part of the joint appendix to which you drew our attention? I'm sorry? You drew our attention to a part of the joint appendix just now. Yeah. What was that reference that you made? Well, that was a reference to a 10-page brief that was filed given the 10-year delay in this case. And in that, 277-1, was the discussion of why we have standing to be before this court as against Lumbermen's. Brief in our court? Yes, in your court. Also, I'd point out in the reply brief at document 86, section 6A, there's a lengthy discussion of the facts that what you were told by Diamond is just not true. They were apprised of the $750,000 settlement, JA359, and at a time when they claimed no policy benefits was available to us, JA582, and that they were aware that we were intending to go to the Lambert trial, and that's in the Hubble declarations, and they were advised of various status, that's JA357 and 1674-75, all discussed at pages 17 to 18 with supporting authority in the reply brief. And the other thing about copyright infringement is the mere display of a product is an act that creates infringing. So when that display also serves an advertising modality as it does in the display at trade shows, as catalogs, or as attachments. Yes. Right. Not in any thing that I would look at and say, gee, that's an advertisement. Well, most people think a catalog is an advertisement. Most people don't. No, it's the physical look and feel of the product as described in the catalog, as displayed at a trade show, it is part and parcel of the way the product is understood. So there's a case that says a custom home is an advertisement for itself, because that's the nature of that product is you look at it by going through it and seeing it. And since display itself creates liability, the display can have an advertising modality. Most of the product is not an advertisement for itself cases do not deal with copyright infringement claims where the liability creation is a different pathway. Another case called Bear Wolf out of Florida. Cigar holder. It's the advertising for it that gets the coverage, not the sale of a competing copyright infringing product. It is the display of product which creates liability. Not the sale of the product itself. Correct. It's the. Yeah, advertising itself. It's the use of the product to advertise. That creates liability in and of itself. And that's an important distinction that takes care of the patent and the other cases they have. There's a case called ESY out of Florida. I cited a trade dress case. They had interesting labels. The labels themselves had trade dress protection. Their physical display created liability in advertising because the physical presence of that particular tag had its own attractive feature that made it an advertisement. This notion that it has to be outside is just adding words of limitation under the guise of. Thank you very much. Thank you. We're adjourned. Thank you. Thank you. He doesn't usually take that one.